UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. CLARKE | ) | Case No. 4:08CV278 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | [Resolving Doc. #17] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendant. | ) | |

This matter is before the Court upon a motion for summary judgment (Doc. 17) filed by Defendants, the United States of America, the United States Attorney General, and the Department of Justice (collectively, "the Government"). Plaintiff, Michael A. Clarke, has responded in opposition to the motion. For the reasons stated herein, the Government's motion is GRANTED.

**I.    Facts**

Clarke is an inmate currently incarcerated at the Northeast Ohio Correctional Center, a facility that is a part of the Federal Bureau of Prisons. Clarke was initially incarcerated on August 2, 1996. On February 5, 2008, Clarke filed this suit against the Government pursuant to the Federal Tort Claims Act ("FTCA"). In his complaint, Clarke alleges that he injured his knee in 1996 and that he has received improper treatment and/or an improper diagnosis of his injuries from 1996 until 2005.

On December 11, 2008, the Government moved for summary judgment on the complaint. In its motion, the Government asserts that Clarke's claim must fail because he has failed to introduce expert evidence in support.  Clarke has responded in opposition, urging that the motion be denied.  The Court now reviews the pending motion.

## II.     Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c).  The initial burden of showing the absence of any "genuine issues" belongs to the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. (quoting former Fed.R. Civ.P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens.  *Id*. at 252.  Moreover, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion."  *U.S. v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky*

2

*Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  Moreover, Fed.R. Civ.P. 56(e)(2) states as follows:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Accordingly, summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact.  *Anderson,* 477 U.S. at 250.

### III.  Legal Analysis

Clarke filed his complaint pursuant to the FTCA.  The FTCA grants a limited waiver of sovereign immunity and allows tort claims against the United States "in the same manner and to the same extent as a private individual under like circumstances[.]"  28 U.S.C. § 2674.  In other words, "[t]he Act waives sovereign immunity to the extent that state-law would impose liability on a private individual in similar circumstances."  *Young v. U.S.*, 71 F.3d 1238, 1241 (6th Cir. 1995) (internal quotation marks and citation omitted).  Accordingly, "[w]hether a claim could be made out [] depend[s] upon whether a private individual under like circumstances would be liable under state law[.]"  *U.S. v. Muniz*, 374 U.S. 150, 153 (1963).  As such, liability under 28 U.S.C. § 1346(b) is governed by state law, including claims of medical malpractice.  *See Vance v. U.S.*, 90 F.3d 1145, 1148 (6th Cir. 1996); and see *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) (noting that in a FTCA proceeding it is the law of the state where the events occurred that controls.).

Clarke's complaint sounds in medical malpractice.  As Clarke has alleged events that occurred in both Maryland and Ohio, the Court will review his claim under the laws of both states.

1. **Maryland**

The Government has alleged that Clarke's malpractice claim must fail under Maryland law because he failed to produce expert evidence of any kind in support his claim. This Court agrees.

Expert witnesses play a pivotal role in medical malpractice actions in which the plaintiff bears the burden of proof of demonstrating that a professional breached the requisite standard of care or skill and that such breach was a direct cause of the injury. *Nolan v. Dillon*, 261 Md. 516, 534 (Md. Ct. App. 1971); *Suburban Hosp. Ass'n, Inc. v. Mewhinney*, 230 Md. 480, 484 (Md. Ct. App. 1963). *See also Shilkret v. Annapolis Emergency Hosp. Ass'n*, 276 Md. 187, 190 (Md. Ct. App 1975); *Johns Hopkins Hosp. v. Genda*, 255 Md. 616, 623 (Md. Ct. App. 1969). Because the focus of a medical malpractice action is the defendant's use of suitable professional skill, which is generally a topic calling for expert testimony, Maryland courts have repeatedly recognized that expert testimony is required to establish negligence and causation. *Meda v. Brown*, 318 Md. 418, 428 (Md. Ct. App. 1990); *Genda*, 255 Md. at 623; *Fink v. Steele*, 166 Md. 354, 361 (Md. Ct. App. 1934). If proof of either of these two elements is lacking, "the court may rule, in its general power to pass upon the sufficiency of the evidence, that there is not sufficient evidence to go the jury." *Fink*, 166 Md. at 361 (internal citation and quotation omitted). *See also Genda*, 255 Md. at 622. Maryland also recognizes an exception to the requirement of expert evidence "in cases in which physicians have done an obviously negligent act such as accidentally amputating the wrong arm, or negligently leaving a sponge in a patient's body." *Suburban Hosp. Ass'n, Inc. v. Hadary*, 22 Md. App. 186, 191 (Md. Ct. App. 1974).

Clarke has not produced any expert evidence in support of his claim. Accordingly, he must rely upon the exception to Maryland's general rule requiring expert evidence. Reviewing

the evidence in a light most favorable to Clark, his claim does not fall within the exception.

Clarke's medical history dates back to 1996 when he first notified staff of his knee problems. He reported to staff that he had a history of "water" on his knee and had arthrocentesis and bursitis. Throughout his incarceration, Clarke received a variety of medical treatments for his knee problems. In October 1996, Clarke received steroid injections in both knees. In May 1997, he received Motrin for his pain. On March 13, 1998, he was referred to an orthopedist. In April 1998, at the direction of the orthopedist, Clarke again received steroid injections. In June 1998, Clarke was again given Motrin for his pain. In July 1998, Clarke received steroid injections once more. In September 1998, Clarke received an injection in one knee and a brace for his other knee. In September 1999, Clarke received X-rays on his left knee which indicated osteoarthritis. In August 2000, both of Clarke's knees were X-rayed, revealing bilateral osteoarthritis. X-rays of Clarke's right knee were again taken in November 2000. On March 2, 2001, Clarke received an MRI on one knee. On June 6, 2001, Clarke again received steroid injections in both knees.

For a period of time after the above, Clarke had few, if any, documented complaints of knee pain. He was again seen complaining of knee pain in October 2003. On February 8, 2004, Clarke received MRI results reflecting things such as joint space narrowing and osteochondral irregularity. In September 2004, it was recommended that Clarke receive arthroscopic surgery, and that surgery was performed on February 10, 2005, to repair a torn meniscus, medial and lateral abrasions, and a torn ACL.

Nothing about Clarke's significant medical history presents an error by medical staff so obvious as to obviate the need for expert testimony. Rather, Clarke's medical history indicates a lengthy history of treatment and at best a debatable question regarding the conservative nature of

the treatment. Clarke's cause of action, therefore, does not fall within the obvious nature that would permit him to satisfy his burden of proof without expert testimony. Accordingly, under Maryland law, summary judgment must be granted in favor of the Government.

   **2. Ohio**

    Ohio law provides for a similar analysis of the claims set forth by Clarke.

> Under Ohio law, as it has developed, in order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things.

*Bruni v. Tatsumi* 46 Ohio St.2d 127, 131 (Ohio 1976). "The issue as to whether the physician or surgeon has proceeded in the treatment of a patient with the requisite standard of care and skill must ordinarily be determined from the testimony of experts." *Rogoff v. King*, 91 Ohio App.3d 438, 445 (Ohio Ct. App. 1993). Further, Clarke was required to prove causation via expert testimony. *See Id*. Therefore, to prove his medical malpractice claim under Ohio law, Clarke was required to provide expert testimony regarding the recognized medical standards and whether his doctors breached those standards. *See Id*. "Failure to establish the recognized standards of the medical community has been fatal to the presentation of a prima facie case of malpractice by the plaintiff[.]" *Bruni*, 46 Ohio St.2d at 131; *Buerger v. Ohio Dept. of Rehab. & Corr.*, 64 Ohio App.3d 394, 398 (Ohio Ct. App. 1989). A plaintiff's failure to produce expert evidence on the standard of care or medical records showing lack of care generally results in dismissal. *Buerger*, 64 Ohio App.3d at 398.

6

However, expert testimony is not necessary under Ohio's "common knowledge exception" to the general rule requiring expert opinion. *Id.* at 400-01. The common knowledge may apply in matters of gross inattention to obvious situations. *Id.* at 399; *Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503, 506-07 (Ohio 1964).

As the Court detailed above in its analysis of Maryland law, this type of exception is inapplicable to the facts presented by Clarke. Accordingly, Clarke was required to produce expert evidence to support his cause of action. Under Ohio law, Clarke's failure requires the Court to grant summary judgment in favor of the Government.

### IV. Conclusion

Based upon the reasons stated herein, the Government's motion for summary judgment is GRANTED. Clarke's complaint is DISMISSED.

The Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


DATED: March 4, 2009              /s/ John R. Adams
                                  JUDGE JOHN R. ADAMS